IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ISMAIL ALIYEV,<br><br>             Plaintiff,<br><br>vs.<br><br>FEDEX GROUND PACKAGE SYSTEM, INC., and GNB TRUCKING, INC.,<br><br>             Defendants. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br>Case No. 2:12-CV-1079-TC |

Plaintiff Ismail Aliyev, a native of Russia who speaks English with a heavy accent, has filed a federal civil rights discrimination claim against FedEx Ground Package System, Inc. (FedEx Ground).[1] He alleges that FedEx Ground dismissed him from his job as a commercial long-haul truck driver[2] on the basis of his national origin. FedEx Ground moves for dismissal of Mr. Aliyev's complaint under Federal Rule of Civil Procedure 12(b)(6). FedEx Ground contends that at the moment an inspection officer at a weigh station in Iowa deemed Mr. Aliyev a "Non-English Speaking Driver" under the federal motor carrier regulations, he was not qualified as a commercial truck driver and so, as a matter of law, FedEx Ground could no longer retain him as a driver without violating the same federal regulations.

---

[1]Mr. Aliyev has also named GNB Trucking, Inc. as a defendant. GNB has not filed any motion.

[2]Mr. Aliyev claims to be an employee of both FedEx Ground and GNB Trucking, Inc. FedEx Ground disputes Mr. Aliyev's "joint employer" allegation, but accepts it as true for purposes of this motion.

The court finds that Mr. Aliyev has not pleaded sufficient facts to survive FedEx Ground's motion to dismiss, and allowing him to amend his complaint would be futile. Accordingly, the court GRANTS FedEx Ground's Motion to Dismiss.

## FACTUAL ALLEGATIONS

The facts are taken from Mr. Aliyev's Amended Complaint[3] ("Complaint") as well as the citation and inspection report attached to Mr. Aliyev's opposition brief (Doc. No. 24).[4]

Ismail Aliyev was born in the Soviet Union and immigrated to the United States in 2005 (he became a U.S. citizen in 2011). Although Mr. Aliyev has a heavy accent, he does speak English.

He works as a long-haul commercial truck driver, a job that requires him to have a Commercial Driver's License (CDL). He has maintained his CDL while working as a truck driver, including the period at issue in his Complaint. To obtain a CDL, a driver must pass an English proficiency test.

In August 2010, he was hired by GNB Trucking, Inc. to drive a long-haul truck for FedEx Ground. According to Mr. Aliyev, he was employed by both GNB and FedEx Ground, which, he alleges, are joint employers.

---

[3]Doc. No. 12.

[4]When evaluating a Rule 12(b)(6) motion to dismiss, the court may consider facts outside the four corners of the complaint without converting the motion to one for summary judgment if the documents containing the facts are central to the plaintiff's claims, are referenced in the complaint, and are undisputedly authentic. Pace v. Swerdlow, 519 F.3d 1067, 1072 (10th Cir. 2008); Tal v. Hogan, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006). Mr. Aliyev's Amended Complaint specifically refers to the citation and the inspection report. Accordingly, the court incorporates information from those documents into its statement of facts. The court will not consider any other evidence outside the pleadings, although it will review Mr. Aliyev's Declaration (Doc. No. 24-3) to determine whether granting leave to amend would be futile.

On August 25, 2011, Mr. Aliyev was driving a FedEx Ground truck and stopped at an Iowa weigh station, where an inspection officer from the Iowa Department of Transportation conducted a "driver/vehicle inspection." The inspector issued a citation to Mr. Aliyev for violating the "14 Hour Rule" (that is, he exceeded the maximum hours of service allowed in one driving shift). The inspector also generated a separate inspection report. (See Exs. to Pl.'s Opp'n Mem. (Doc. Nos. 24-1, 24-2).) In the inspection report, the inspector reported a violation[5] of Rule "391.11B2" after determining that Mr. Aliyev was a "Non-English Speaking Driver." The inspector's notice of violation referred to the federal rule codified at 49 C.F.R. § 391.11. That rule provides that a person is qualified to drive a commercial motor vehicle if, among other requirements, the driver "[c]an read and speak the English language sufficiently to converse with the general public, to understand highway traffic signs and signals in the English language, to respond to official inquiries, and to make entries on reports and records[.]" 49 C.F.R. § 391.11(b)(2). It further provides that "a motor carrier shall not require or permit a person to drive a commercial motor vehicle unless that person is qualified." 49 C.F.R. § 391.11(a) (emphasis added).

Mr. Aliyev reported the notice of violation to GNB. For three more weeks, he continued to drive for GNB and FedEx Ground. Then GNB fired him based on instructions from FedEx Ground. FedEx Ground relied on the violation noted in the inspection report that Mr. Aliyev was deemed to be a "Non-English Speaking Driver." According to Mr. Aliyev's Complaint, GNB has acknowledged that Mr. Aliyev is a very good driver and that GNB wished to keep Mr. Aliyev

---

[5] Mr. Aliyev emphasizes that the notice of violation was contained in an inspection report, not in a formal citation.

as a driver. But GNB followed FedEx Ground's direction.

Mr. Aliyev offered to fly to FedEx Ground's office to demonstrate his ability to speak English. FedEx Ground declined his offer.

After he lost his job at FedEx Ground, Mr. Aliyev found another job as a truck driver working for a lower rate of pay.

Mr. Aliyev alleges that he "was terminated based on an untrue allegation and/or stereotype that he could not speak sufficient English. This allegation was based upon the fact that the Plaintiff is of foreign descent and speaks with an accent." (Compl. ¶ 24.) He further alleges that FedEx Ground "chose not to investigate this faulty allegation, and/or rely upon GNB Trucking's assessment that Plaintiff was fit to perform his job (i.e., was sufficiently proficient in English) and forced his termination." (Id. ¶ 25.) He asserts that FedEx Ground's decision to fire him was motivated by discriminatory animus.

## **ANALYSIS**

In his first cause of action, Mr. Aliyev alleges that FedEx Ground intentionally discriminated against him on the basis of his national origin in violation of Title VII of the Civil Rights Act.[6] In his second cause of action, he alleges that FedEx Ground violated 42 U.S.C.

---

[6]Mr. Aliyev additionally alleges a "cat's paw" theory (also known as subordinate bias liability) under Title VII. (See Pl.'s Opp'n at 5.) "In the employment discrimination context, 'cat's paw' refers to a situation in which a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles, 450 F.3d 476, 484 (10th Cir. 2006). Here, Mr. Aliyev analogizes the Iowa inspector to a biased subordinate working at FedEx Ground. The analogy is not persuasive. The Iowa inspector was an unrelated third party, not a FedEx Ground employee or agent who provided a recommendation or information that FedEx Ground opted to accept. Accordingly, the court finds that the theory does not apply to Mr. Aliyev's situation.

§ 1981 through disparate treatment of non-native English-speaking drivers such as himself. And in his third and final cause of action, he alleges under 42 U.S.C. § 1981 "upon information and belief" that FedEx Ground engaged in "a pattern and practice of terminating employees which [sic] are non-native English speakers." (Id. ¶ 35.)

In response, FedEx Ground contends that Mr. Aliyev's claims fail as a matter of law because there is no set of facts that he alleges, or could allege, that would establish his claims. Addressing the Title VII discrimination claim, FedEx Ground asserts that the allegations in the Complaint establish that he was <u>not</u> qualified for the job, and so he cannot establish an essential element of the claim. FedEx Ground makes a similar argument for Mr. Aliyev's disparate treatment claim. And, finally, FedEx Ground points out that Mr. Aliyev has pleaded no facts whatsoever in support of his claim that FedEx Ground engaged in a pattern and practice resulting in discrimination.

**Standard of Review for a Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) requires dismissal when the plaintiff has not stated a claim for which relief can be granted. Under the Rule 12(b)(6) standard of review, the court must take all well-pleaded facts as true for purposes of analyzing the motion to dismiss. Khalik v. United Air Lines, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)). To survive a motion to dismiss, a plaintiff must plead enough facts to state a plausible claim for relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference

5

that the defendant is liable for the misconduct alleged." Id.

**Title VII Claim of Discrimination on the Basis of National Origin**

When analyzing the merits of an employment discrimination claim (assuming there is no direct evidence of an intent to discriminate), the court applies the three-step burden-shifting framework set forth in McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973). Khalik, 671 F.3d at 1192; Crowe v. ADT Sec. Servs., Inc., 649 F.3d 1189, 1194 (10th Cir. 2011). Under that framework, the employee must first prove a prima facie case of discrimination. If the employee satisfies the first step, a presumption of discrimination is created and the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the adverse employment action. If the employer does so, the burden shifts back to the employee to show that his protected status was the reason for his discharge and that the employer's explanation is pretext for discrimination. Khalik, 671 F.3d at 1192.

Because this case is before the court on a Rule 12(b)(6) motion to dismiss—where the court may not consider evidence—Mr. Aliyev need not fully satisfy the McDonnell-Douglas burden at this stage. Khalik, 671 F.3d at 1192; Hunt v. Central Consolidated Sch. Dist., 951 F. Supp. 2d 1137, 1173-75 (D.N.M. 2013); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002) (holding that the requirement to establish a prima facie case in an employment discrimination claim is "an evidentiary standard, not a pleading requirement."). Instead, the court must look only to well-pleaded factual allegations in Mr. Aliyev's Complaint.

"While specific facts are not necessary, some facts are" necessary in a complaint, to survive a motion to dismiss. Khalik, 671 F.3d at 1193. As a guide to determining what types of facts are necessary, the Tenth Circuit allows courts to consider the McDonnell-Douglas burden-

6

shifting analysis to determine the plausibility of the discrimination claim. Id.

In a discriminatory discharge case, a plaintiff establishes a prima facie case by showing that (1) he belongs to a protected class; (2) <u>he was qualified for the job</u>; (3) despite his qualifications, he was discharged; and (4) the job was not eliminated after his discharge. <u>Rivera v. City & County of Denver</u>, 365 F.3d 912, 920 (10th Cir. 2004) (emphasis added). Here, FedEx Ground focuses on the second element, contending that Mr. Aliyev has not alleged facts (and cannot allege any facts) establishing that he was qualified for the job of commercial long-haul truck driver.

Mr. Aliyev was cited by the Iowa inspector for failing to meet one of the requirements to be qualified as a driver under the federal motor carrier safety regulations. Specifically, the Iowa inspector noted on the Driver/Vehicle Inspection Report that Mr. Aliyev was a "Non-English Speaking Driver." Under the same safety regulations, FedEx Ground, as a motor carrier, may not hire a "Non-English Speaking Driver" to transport its goods by truck. <u>See</u> 49 C.F.R. § 391.11(a) ("a motor carrier shall not require or permit a person to drive a commercial motor vehicle unless that person is qualified to drive a commercial motor vehicle."). If FedEx Ground retained Mr. Aliyev as a driver, it potentially faced liability under the regulations.

Mr. Aliyev alleges that the inspector's determination was incorrect because the Iowa officer was mistaken (there was confusion about a bill of lading, and Mr. Aliyev attributes that confusion to the Iowa officer's mistaken issuance of the notice of violation) and so the notice of violation was not valid. He alleges that he is, as a matter of fact, qualified for the job because, among other things, he is sufficiently proficient in English (as demonstrated by, for example, GNB's belief in his qualifications under the regulation, and the continued validity of his CDL)

7

and so he meets the requirements in 49 C.F.R. § 391.11(b)(2). For purposes of analysis under Rule 12(b)(6), the court must assume the truth of Mr. Aliyev's allegation that his actual skills (and thus qualification for the job) demonstrate that the Iowa inspector mistakenly issued the notice of violation, and so he was qualified for the job. Operating under that assumption, the court finds that the Complaint, read in a light most favorable to Mr. Aliyev, contains enough facts to infer that Mr. Aliyev would be able to establish a prima facie case of discrimination.

If this case were at the summary judgment stage, the burden would then shift to FedEx Ground to provide a legitimate non-discriminatory reason for removing Mr. Aliyev as a truck driver for FedEx Ground. Here, the court looks at the allegations. According to Mr. Aliyev's Complaint, FedEx Ground interpreted the notice of violation to immediately bar FedEx Ground from allowing Mr. Aliyev to drive a FedEx Ground truck. In other words, regardless of whether Mr. Aliyev speaks sufficient English, once that violation was noted on the inspection report, retaining Mr. Aliyev as a driver would have exposed FedEx Ground to potential liability for violating the federal motor safety carrier regulations. Under Mr. Aliyev's own allegations, FedEx Ground offered a legitimate non-discriminatory reason for discharging him.

To avoid dismissal, Mr. Aliyev must allege facts that create a plausible inference that FedEx Ground used the notice of violation as pretext for discrimination. "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997) (internal citations and quotation marks omitted).

Under the third prong of the McDonnell-Douglas framework, the court should not ask "whether the employer's reasons were wise, fair or correct; the relevant inquiry is whether the employer honestly believed its reasons and acted in good faith upon them. Even a mistaken belief can be a legitimate, non-pretextual reason for an employment decision." Riggs v. AirTran Airways, Inc., 497 F.3d 1108, 1118-19 (10th Cir. 2007) (internal citations and quotation marks omitted; emphasis added).

In other words, although the parties disagree about the legal effect of the Iowa inspector's finding, the court need not resolve that dispute because the court does not look at whether FedEx Ground's reason was actually correct. Even if FedEx Ground incorrectly interpreted the legal effect of the notice of violation, under Riggs the question is not whether FedEx Ground's decision to discharge Mr. Aliyev was based on a faulty understanding of the facts and interpretation of the regulations, but rather whether the alleged facts create an inference that the reason provided was not an honest mistake and that FedEx Ground did not rely on the notice of violation in good faith.

Again, Mr. Aliyev need not prove his case at this stage, but he must at least allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Co. v. Twombly, 550 U.S. 544, 570 (2007)). Although he asserts that there are enough facts in the Complaint to call into question FedEx Ground's stated reason, the court disagrees.

He alleges that FedEx Ground should not have relied on the notation without first confirming whether it was valid and self-executing before making its decision to remove him as a driver. He further alleges that if FedEx Ground had investigated, it would have discovered that

9

the designation of Mr. Aliyev as a Non-English Speaking Driver was wrong and invalid. He says that FedEx Ground blindly relied on the Iowa inspector's notation and wilfully turned its head the other way (especially in light of GNB's assertion that Mr. Aliyev was qualified) because he is Russian.

Mr. Aliyev disagrees with how FedEx Ground handled the matter, arguing that FedEx Ground should have retained him despite the inspector's citation to the rule, and then investigate before acting. But he does not cite to any rule or policy that required FedEx Ground to do so. Absent any citation to authority establishing FedEx Ground's duties at that point, his disagreement with FedEx Ground's hasty decision and its interpretation of the effect of the notice of violation does not give rise to any inference that FedEx Ground terminated him on the basis of national origin, especially in light of the language of the regulations, which could arguably support FedEx Ground's decision. His allegations suggest nothing more than an "honestly held (even if erroneous) business judgment," which the court may not second-guess (even if the employer's decision was mistaken). Riggs v. Airtran Airways, Inc., 497 F.3d 1108, 1118-19 (10th Cir. 2007).

Mr. Aliyev notes that the Iowa inspector did not fine him or pull him from service when the notice of violation was issued and that FedEx Ground's refusal to give this fact credence discredits its proffered reason. In essence, Mr. Aliyev concludes, without considering other possibilities, that the Iowa inspector did not believe that the notice of violation required Mr. Aliyev to be pulled from service. Determining the reason for the inspector's action would be speculation. The same can be said for Mr. Aliyev's point that the notation did not appear in an actual citation but was in an inspection report. The court will not speculate why the inspector

10

chose to record his findings in that way. The fact is, the inspector made a determination. Whether he thought it needed a separate citation is irrelevant because the question is whether FedEx Ground's interpretation of the inspection report looks like pretext.

Mr. Aliyev points out that he drove for three more weeks before FedEx Ground removed him from service. But he does not allege that FedEx Ground had immediate notice of the stated violation (Mr. Aliyev says he informed GNB about it) and that the company ignored the effect of the notice of violation until three weeks later. Even though FedEx Ground did not act immediately but instead allowed him to continue driving for three weeks, such a delay (a three-week lag in time at a large corporation) followed by a summary dismissal does not infer discriminatory animus. Such a fact does not contradict or otherwise undermine the explanation provided by FedEx.

The allegations set forth by Mr. Aliyev do not weaken the inference that FedEx Ground honestly believed it had to terminate Mr. Aliyev as a driver in order to protect itself from liability. For the foregoing reasons, the court finds that Mr. Aliyev does not allege facts in his Complaint that plausibly suggest FedEx Ground acted based on discriminatory animus rather than a legitimate business reason.

**Claim of Disparate Treatment in Violation of 42 U.S.C. § 1981**

To survive FedEx Ground's motion to dismiss his § 1981 disparate treatment claim, Mr. Aliyev must allege facts that, if true, would establish that (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) employees similarly situated in all relevant respects received different treatment than he received. Carney v. City & County of Denver, 534 F.3d 1269, 1273 (10th Cir. 2008) (setting forth elements of prima facie case of disparate

11

treatment); McGowan v. City of Eufala, 472 F.3d 736, 745 (10th Cir. 2006). His Complaint fails to allege facts sufficient to establish the third element.

Nowhere in his Complaint does he state in more than conclusory fashion that similarly situated drivers received different treatment. The most he provides is a statement in his Declaration that he knows "of two other truck drivers in Salt Lake City who have worked for FedEx and have also been fired after receiving inspections that noted 'Non-English Speaking Driver.' Both of these drivers are Russian, like [Mr. Aliyev], and both also speak English with an accent, like [Mr. Aliyev does.]" (Aliyev Decl. at p. 2.) Even if this information were added to his Complaint, it would not state a claim for disparate treatment. He does not identify any similarly-situated co-worker who was treated differently. The information about the Russian drivers simply shows that FedEx Ground acted consistently when a driver was deemed to be a "Non-English Speaking Driver."

In a recent case, the Sixth Circuit came to a similar conclusion in a matter where the defendant sought dismissal of the plaintiff's disparate treatment claim. In 16630 Southfield Ltd. Partnership v. Flagstar Bank, FSB, 727 F.3d 502 (6th Cir. 2013), the Sixth Circuit upheld the dismissal of an Iraqi plaintiff's claim for disparate treatment because the allegations were wholly conclusory. In that case, the plaintiff alleged that the defendant bank discriminated against him based on his national origin when the bank refused to re-finance his loan. In the complaint, the plaintiff alleged, for example, that "'upon information and belief' [the defendant bank] has refinanced delinquent borrowers who 'were Caucasian' or 'not . . . members of minority groups'" and that "'upon information and belief' [the defendant bank] has refinanced 'non-Iraqi-borrowers 'where the debt to equity ratio is significantly less than exists regarding Plaintiffs."

12

Flagstar Bank, 727 F.3d at 506. There, the court concluded that dismissal was appropriate:

> These are precisely the kinds of conclusory allegations that Iqbal and Twombly condemned and thus told us to ignore when evaluating a complaint's sufficiency. No doubt disparate treatment of similarly situated people may support an inference of discrimination. But the plaintiffs have not identified any similarly situated individuals whom [the defendant bank] treated better. They have merely alleged their "belief" that such people exist. These "naked assertions devoid of further factual enhancement" contribute nothing to the sufficiency of the complaint.

Id. (quoting Iqbal, 554 U.S. at 678) (internal citations omitted). Here, Mr. Aliyev provides no "factual enhancement" to support his conclusory statements.

In response to FedEx Ground's argument that his claim contain no factual allegations whatsoever, he argues that he should be given the chance to conduct discovery before his disparate treatment claim is rejected outright. He says that "[h]ere, the parties have done no discovery, and as such, there is no evidence regarding how FedEx treats other drivers who have received citations that may affect its safety rating. Without information like that, it is impossible to determine whether Mr. Aliyev's termination was the result of business necessity or discrimination." (Pl.'s Opp'n (Doc. No. 24) at 7.) The difficulty with that argument is that Mr. Aliyev does not point to even one situation where a similarly-situated co-worker may have been treated differently. Without at least a scintilla of evidence (or, in this case, at least one factual allegation) from which the court could infer that disparate treatment may be an issue at FedEx Ground, the court cannot justify granting Mr. Aliyev permission to conduct what would essentially be a fishing expedition.

Mr. Aliyev's disparate treatment claim fails for another reason. A disparate treatment claim, like a discriminatory discharge claim, would also be analyzed under the McDonnell-

Douglas three-part framework. See, e.g., Drake v. City of Fort Collins, 927 F.2d 1156, 1160 (10th Cir. 1991) (applying McDonnell-Douglas burden-shifting analysis to disparate treatment claim). Because the court has already found that the allegations do not create an inference that FedEx Ground's proffered reason was pretext, Mr. Aliyev's disparate treatment claim fails for the same reasons the court dismisses his Title VII claim.

Based on the foregoing, the court finds that FedEx Ground is entitled to dismissal of Mr. Aliyev's disparate treatment claim under 42 U.S.C. § 1981.

**Disparate Impact Claim and 42 U.S.C. § 1981**

Mr. Aliyev has asserted a disparate impact claim under 42 U.S.C. § 1981. However, although disparate impact claims are available under Title VII, they are not available under § 1981. Under Title VII, a disparate impact claim does not require a showing of discriminatory intent, but instead forbids "'practices that are fair in form, but discriminatory in operation[.]'" Tabor v. Hilti, Inc., 703 F.3d 1206, 1220 (10th Cir. 2013) (quoting Lewis v. City of Chicago, 560 U.S. 205, 130 S. Ct. 1291, 2197 (2010)). In contrast, a claim under 42 U.S.C. § 1981 requires a showing of purposeful discrimination before a party can be held liable. Consequently, disparate impact claims, which by their nature do not require a finding of discriminatory intent, are not cognizable under Section 1981. See Drake v. City of Fort Collins, 927 F.2d 1156, 1162 (10th Cir. 1991) ("Disparate impact claims that do not 'raise a presumption of discriminatory purpose' are 'insufficient to sustain a cause of action under sections 1981 and 1983.'") (quoting New Mexico ex. rel. Candelaria v. City of Albuquerque, 768 F.2d 1207, 1209 (10th Cir. 1985)); see also Sandoval v. City of Boulder, 388 F.3d 1312, 1324 n.5 (10th Cir. 2004) ("§ 1981 requires purposeful discrimination and therefore does not apply to disparate impact claims") (citing

Drake, 927 F.2d at 1162). If Mr. Aliyev meant to bring his claim under § 1981, his claim fails as a matter of law. But, even assuming Mr. Aliyev mistakenly cited to 42 U.S.C. § 1981 when he actually meant to list Title VII as the basis for his disparate impact claim, his claim still fails for the same reasons his discriminatory discharge claim under Title VII fails.

Moreover, his allegations of disparate impact are extraordinarily conclusory. The sum total of his allegations reads as follows: "Defendants were joint employers of Plaintiff. Upon information and belief, Defendant FedEx has a pattern and practice of terminating employees which [sic] are non-native English speakers. This practice has a disparate impact on individuals of different national origins and/or ethnicities. This practice violates 42 U.S.C. § 1981." (Am. Compl. ¶¶ 34-37.) Both Twombly and Iqbal prohibit such conclusory statements. And nothing in the Complaint's "General Allegations" provides supplemental information that takes Mr. Aliyev's claim out of the conclusory allegation realm prohibited by Iqbal and Twombly. To the extent Mr. Aliyev blames the lack of specific facts on his inability to access information that is in the hands of his employer (as he claims for his disparate treatment claim), he does not allege any fact whatsoever that would create at least some justification for discovery. As noted above, granting discovery based on the allegations before the court would essentially be granting a fishing expedition.

FedEx Ground is entitled to dismissal of Mr. Aliyev's disparate impact claim.

**Request For Leave To Amend Complaint**

Mr. Aliyev asks the court, in the alternative, for leave to amend his Complaint to add facts that would satisfy the Rule 12(b)(6) pleading standard. The Federal Rules of Civil Procedure provide that a court should freely give leave to amend "when justice so requires."

Fed. R. Civ. P. 15(a)(2). But the court may deny the request for leave to amend if the proposed amendment would be futile. Wilkerson v. Shinseki, 606 F.3d 1256, 1267 (10th Cir. 2010). An amendment would be futile when the proposed amended complaint would not survive a motion for summary judgment. Bauchman v. West High School, 132 F.3d 542, 561-62 (10th Cir. 1997).

In his Declaration, Mr. Aliyev proffers the following additional facts to support his request for leave to amend: he knows "of two other truck drivers in Salt Lake City who have worked for FedEx and have also been fired after receiving inspections that noted 'Non-English Speaking Driver.' Both of these drivers are Russian, like [Mr. Aliyev], and both also speak English with an accent, like [Mr. Aliyev does.]" (Aliyev Decl. at p. 2.) (Everything else in his Declaration has already been stated in his Complaint, so the "two truck drivers" fact is the only new one). But even considering these sworn facts and assuming their truth, the court finds that Mr. Aliyev does not state a claim for employment discrimination under Title VII or 42 U.S.C. § 1981. Indeed, the fact that two other Russian truck drivers experienced the same problem suggests that FedEx Ground acted consistently when handling such violations.

Moreover, the Complaint and Mr. Aliyev's Declaration are devoid of any factual allegation that suggests a discriminatory animus. Such an allegation might include, for example, a derogatory remark by a decision-maker, or an allegation of more lenient treatment of drivers whose native language was English and who had been cited for something that created the same potential liability for FedEx Ground. But he does not offer anything like that. And without that, Mr. Aliyev has no claim to state, even if he were given leave to amend.

After considering the additional allegations in Mr. Aliyev's Declaration, the court finds that amendment would be futile.

**ORDER**

For the foregoing reasons, FedEx Ground Package System, Inc.'s Motion to Dismiss (Doc. No. 16) is GRANTED.

DATED this 3rd day of April, 2014.

BY THE COURT:

*Tena Campbell*
TENA CAMPBELL
U.S. District Court Judge